IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KAREN SUE SWENSON,                    )
                                      )
              Plaintiff,              )
v.                                    )        Case No. CIV-10-134-SPS
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of the Social            )
Security Administration,              )
                                      )
              Defendant.              )

## OPINION AND ORDER

The claimant Karen Sue Swenson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-

step sequential process for evaluating a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).   This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.   *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].   The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).   The Court may not reweigh the evidence nor substitute its discretion for that of the agency.   *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).   Nevertheless, the Court must review the record as a

---

[1]   Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.   Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.   *Id.* §§ 404.1521, 416.921.   If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment (or impairments "medically equivalent" to one), she is found disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish she lacks residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner at step five to establish there is other work she can perform in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows the claimant's impairment does not preclude alternative work.   *See generally Williams v. Bowen,* 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on May 24, 1963, and was forty-three years old at the time of the administrative hearing.  She has a bachelor's degree (Tr. 29) and has past relevant work as a medical office receptionist, childcare director, childcare teacher and customer service representative (Tr. 18).  The claimant alleges she has been unable to work since August 31, 2007 due to chronic pain in her neck, right arm and right hand, peripheral neuropathy, depression, and anxiety (Tr. 117).

### Procedural History

On July 22, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Her application was denied.  ALJ Kim Parrish conducted a hearing and found the claimant was not disabled in a decision dated January 21, 2010.  The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found the claimant had the physical residual functional capacity ("RFC") to perform a full range of light work as described in 20 C.F.R. § 404.1567(b), limited to unskilled work because of problems with concentration and no repetitive reaching overhead with her right arm (Tr.

12).  The ALJ concluded that although the claimant could return to any past work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, parking lot attendant, storage facility rental clerk, and information clerk (Tr. 18-19).

### Review

The claimant contends that the ALJ erred: (i) by equating limitation in the area of concentration with ability to perform unskilled work; (ii) by failing to properly analyze the opinion of her treating physician, Dr. Baker Fore; (iii) by failing to properly analyze her credibility; and (iv) by failing to account for her severe right hand impairment in formulating her RFC at step four.  Because the Court finds that the ALJ failed to properly analyze medical evidence in the record, the Commissioner's decision must be reversed.

Because of persistent pain, numbness, tingling, and weakness in her neck and right upper extremity, the claimant had an anterior cervical microdiscectomy at C5-6 and C6-7 with decompression of the spinal cord and bilateral nerve roots to treat compression and disc herniation, which necessitated arthrodesis at C5-6 and C6-7 using bone plugs and locking plates (Tr. 183-84).  The claimant returned to her surgeon, Dr. Eric S. Friedman, for follow-up visits for a period of approximately three months to assess her post-surgical progress, with her final visit on June 1, 2005.  Dr. Friedman noted then that claimant had completed a course of physical therapy which had strengthened and improved mobility in her neck, and that although claimant "still ha[d] numbness in the first two fingers of her right hand," the numbness did not interfere with her everyday activities (Tr. 192).

On April 4, 2007, the claimant received treatment from Dr. Stephanie Berg, M.D., who noted that claimant suffered from chronic pain syndrome secondary to peripheral neuropathy and degenerative disc disease of her cervical spine, chronic fatigue, and had a positive antinuclear antibodies (ANA) test (Tr. 218). The claimant's Lortab was refilled at that time, and her dosage was increased in August 2007 (Tr. 215). Following a move to Ardmore, Oklahoma, claimant began receiving treatment at the Family Health Center, where it was noted that she had neuropathy in her right arm, pain in her right arm and hand due to nerve damage, and was taking Lyrica, Lortab, Hydrocodone, Prozac, Ambien, and Xanax to control her pain and anxiety (Tr. 226).

The claimant was referred to Dr. Baker Fore for pain management and first saw him at the Interdisciplinary Pain Center on March 17, 2008 (Tr. 228-29). Dr. Fore wrote that claimant had neck pain that interfered with household chores and activities of daily living, that claimant did not enjoy recreation and had difficulty with simple self-care activities, and that her pain "functionally impairs all aspects of her life and the quality of her life" (Tr. 228). Dr. Fore then prescribed Ambien, Valium (for muscle spasms in the cervical area and anxiety), Oxycontin, and Effexor (for depression) (Tr. 229). The claimant continued regular treatment with Dr. Fore through September 2009.

On September 9, 2009, Dr. Fore completed a physical residual functional capacity questionnaire, in which he found that claimant's chronic cervical pain made her unable to use her right upper extremity because of decreased motor strength and function (Tr. 303). Dr. Fore also opined that the claimant's paint constantly impacted her concentration and

she was therefore incapable of even low-stress jobs, but she could: (i) sit, stand and walk for about two hours in an eight-hour workday; (ii) occasionally lift less than ten pounds, rarely lift ten pounds, and never lift greater than ten pounds; (iii) never look down, turn her head, look up, or hold her head in a static position; (iv) occasionally twist and crouch or squat; 5) and rarely stoop or bend, climb ladders, or climb stairs (Tr. 305-06).

The claimant underwent a consultative examination with state agency physician Dr. Ravinder Kurella, M.D. on September 27, 2008. Dr. Kurella wrote that the claimant gave a "history of neck pain with radicular symptoms in the right upper extremity" and a "significant restriction in range of motion of her neck associated with pain" (Tr. 239-41). Dr. Kurella also noted "significant tenderness . . . in the cervical region associated with muscle spasm" and observed that claimant's grip strength was considerable decreased on the right side (Tr. 242, 245-46). Dr. Kurella also observed that claimant cried throughout the examination (Tr. 239).

Dr. Patrick Turnock, Ph.D., also examined the claimant to assess her mental health limitations. He noted that claimant had major depressive disorder which was moderate and only partially controlled (Tr. 248). He observed that claimant was tearful throughout the interview, and her concentration was "mildly impaired" (Tr. 248). He recommended claimant attempt part-time work in an office, but that claimant "will be limited by her depression until that has been better managed" (Tr. 249). A psychiatric review technique was performed thereafter from a review of claimant's medical records by state agency psychologist Dr. Janet Smith, Ph.D. She found that claimant's depressive syndrome was

characterized by sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking (Tr. 254). Dr. Smith noted that claimant was mildly restricted in her activities of daily living but moderately limited in maintaining social functioning and maintaining concentration, persistence or pace (Tr. 261).

Finally, state agency physician Dr. Luther Woodcock, M.D. reviewed the medical history of the claimant and completed a physical residual functional capacity assessment in which he found: (i) the claimant was capable of occasionally lifting 20 pounds and frequently lifting 10 pounds; (ii) the claimant could stand and/or walk and sit for six hours in a regular workday; (iii) the claimant had no pushing/pulling, postural, manipulative, visual, communicative, or environmental limitations (Tr. 269-76).

The claimant contends, *inter alia*, that the ALJ improperly rejected the opinion of her treating physician Dr. Baker Fore concerning the severity of her physical limitations. Medical opinions from a treating physician such as Dr. Fore are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

-7-

provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300.  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].  And if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301, so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight."  *Id*. at 1300.

The ALJ indicated that he was rejecting Dr. Fore's opinion about the claimant's limitations because: (i) he found the opinion inconsistent with Dr. Fore's treatment notes; (ii) he felt Dr. Fore was merely sympathetic to the claimant, evidenced by his reliance on her subjective complaints rather than objective findings; and (iii) Dr. Fore's assessment of the claimant's functional capacity was composed of checked boxes (Tr. 17).  But this analysis of the Dr. Fore's opinion was deficient for several reasons.

First, the ALJ should not have rejected Dr. Fore's opinion as based solely upon the claimant's relation of symptoms; nothing in the medical source statement indicated that Dr. Fore's findings *were* in fact based solely on the claimant's subjective complaints.  *See Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'  The ALJ had no legal nor evidentiary basis for either of these findings.   Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy.").  Indeed, Dr. Fore specifically noted that his opinion was based on the claimant's decreased motor strength and function in her cervical spine and right arm, a finding echoed by Dr. Kurella (Tr. 303).  Nor should the ALJ have rejected the opinion based upon his speculation about Dr. Fore's motives, *i. e.*, sympathy for the claimant.  *See*, *e. g.*, *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("[A]n ALJ may not make speculative inferences from medical reports and may reject a . . . physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.").   Furthermore, the notion

that Dr. Fore's functional capacity assessment could be discounted simply because it "consists primarily of checked boxes" is also erroneous. *See Andersen v. Astrue*, 319 Fed. Appx. 712, 723-24 (10th Cir. 2007) (refuting the argument that *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), requires categorical rejection of medical opinions unaccompanied by explanatory material).

The finding that Dr. Fore's opinion as to the claimant's functional limitations was inconsistent was arguably a legitimate basis for refusing to give it controlling weight. But analysis of the opinion should not have ended at this point; the ALJ should have determined the proper weight to give Dr. Fore's opinion by analyzing all of the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300.

Regarding the claimant's functional mental capacity, Dr. Janice Smith found, *inter alia*, that the claimant had moderate limitations in social functioning, including the ability to interact appropriately with the general public (Tr. 266). The ALJ afforded substantial weight to Dr. Smith's opinion *except* for this finding, noting that his own "the finding of mild impairment in the area of social functioning is consistent with the overall evidence." (Tr. 18). But the ALJ cited no evidence contradicting Dr. Smith's finding, *see, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are."), nor any evidence that supported *his* finding,

other than perhaps his analysis of the claimant's credibility as to daily activities, *i. e.*, the ALJ found that the claimant was only mildly limited in maintaining social functioning because she maintained relationships with her family, attended church and medical appointments, and handled money shopping in stores (Tr. 11). Assuming *arguendo* that the ALJ did not usurp Dr. Smith's role as consulting physician, *see, e. g., Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]"), her findings as to the claimant's ability to perform daily activities do not contradict Dr. Smith's findings as to the claimants' ability to perform work activities, and the ALJ should therefore not have rejected them on this basis. *Cf. McGoffin*, 288 F.3d at 1252 ("[A]n ALJ . . . may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.").

Because the ALJ failed to properly analyze the opinions of Drs. Fore and Smith, the decision of the Commissioner must be reversed and the case remanded to the ALJ for proper analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

DATED this 30th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma